## IN THE SUPERIOR COURT OF GUAM

MICHAEL A. TAITANO, )
)
      Plaintiff, )
)
vs. )
)
ROSITA Q. TAITANO, )
)
      Defendant. )
)
_____ )

**DOMESTIC CASE NO. DM0582-12**

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

### INTRODUCTION

This matter came before the Honorable James L. Canto II on Plaintiff's complaint for divorce, filed on August 28, 2012. A bench trial was held on January 16, 2014. Attorney Daniel S. Somerfleck appeared on behalf of Plaintiff and Attorney Jeffrey A. Cook represented Defendant. Having considered the parties' evidence, oral arguments, and the applicable law, the Court now issues the following findings of fact and conclusions of law pursuant to Guam R. Civ. P. 52 (a).

### BACKGROUND

This action arises under an action for dissolution of marriage pursuant to Chapter 8 in Title 19 of the Guam Codes Annotated. On August 28, 2012, Plaintiff filed a complaint for divorce from Defendant based upon the ground of extreme cruelty, and in the alternative, irreconcilable differences. (Compl., 2, Aug. 28, 2012). Plaintiff further requests from the Court the following: an award of the parties' community property to Plaintiff as his sole and separate property; an order against Plaintiff to pay for the "Mortgage with Guam Housing Corporation" on real property located at 349 C. Chalan Manha, Dededo, Guam 96929; a reduction in the time for a final decree of divorce and a grant of a final decree of divorce; and a reversion of the Defendant's name to her maiden name. *Id.* at 2-3. On October 29, 2012, Defendant filed an Answer, wherein she denies that she treated Plaintiff with extreme cruelty and she seeks a divorce on the ground of irreconcilable differences. (Answer, 1-2, Oct. 29, 2012). Defendant further denies Plaintiff's characterization of certain properties as community property and

argues that both the house and the lot located at 349 C. Chalan Manha, Dededo, Guam 96929 (hereinafter "Lot No. 10067-9-2-1-1") are community property. *Id.*

## FINDINGS OF FACT

In a bench trial, "the judge weighs the evidence, determines the credibility of the witnesses, and finds the facts." *United States v. Bales*, 813 F.2d 1289, 1293 (4th Cir. 1987). By a preponderance of the evidence, the Court makes the following findings of fact:

1. Plaintiff began his employment as a police officer with the Guam Port Authority in 1990. He had 22 years of service with the Guam Port Authority when he retired in July 2012.

2. On September 21, 1991, Plaintiff and Defendant were married.

3. Defendant testified that she was arrested twice for family violence against Plaintiff and his son. In the first incident, Defendant was in an argument with Plaintiff. When Defendant tried to get her driver's license out of a vehicle, Plaintiff allegedly choked her. Defendant then bit his hand to release her neck. Plaintiff was not charged with any crime. Defendant testified that she was charged and convicted of family violence regarding the first incident. In the second incident, Defendant was accused of slapping Plaintiff's son. Defendant testified that she was charged and convicted of family violence for the second incident.

4. On August 1, 2001, Plaintiff and Defendant entered into a stipulated permanent restraining order in domestic case *Taitano v. Taitano*, DM 0329-01 (Super. Ct. Guam August 1, 2001) (hereinafter "DM0329-01") requiring them to stay away and not come within 1,000 feet of each other.

5. Defendant testified that the date of separation was in 2002 because Plaintiff allowed Defendant to move back in the house after the second restraining order in 2001. Defendant further testified that the reconciliation lasted for around three months. Plaintiff testified that Defendant lived with him for a few months after the second restraining order.

6. Prior to the second restraining order, Defendant testified that she was taking care of Plaintiff's disabled son.

7. Plaintiff testified that the reason for the divorce was Defendant's mental and physical violence toward him.

8. Plaintiff testified that he was never physically violent toward Defendant.

9. Plaintiff did not file for a divorce earlier because it would have disrupted his work.

10. On July 7, 1994, Plaintiff and Defendant obtained a loan in the amount of $94,000.00 from the Guam Housing Corporation to construct a house on Lot No. 10067-9-2-1.

11. Lot No. 10067-9-2-1 is Plaintiff's separate property and Defendant is not claiming any ownership interest in the lot.

12. Defendant has not made any payments toward the loan with the Guam Housing Corporation since the parties' separation. Plaintiff has made monthly payments of $875.96 toward the loan, for a total of $129,641.00. As of July 19, 2013, the remaining principal balance of the loan was $24,076.00.

13. Defendant did not make a payment toward the loan with the Guam Housing Corporation after separating with Plaintiff.

14. In a realtor's assessment on November 11, 2013 obtained by Plaintiff, the recommended low listing price was $100,000.00, the recommended high listing price was $240,000.00, and the recommended listing price was $195,167.00.

15. Based on the valuation by the Department of Revenue and Taxation (hereinafter "DRT"), in 1996, the appraised value of the lot was $78,152.00 and the appraised value of the house was $90,000.00.

16. Based on the valuation by DRT, in 2012, the appraised value of the lot was $56,808.00 and the appraised value of the house was $90,000.00.

17. The parties have the following community property:

    a. Plaintiff's Port Authority of Guam retirement fund accumulated during the parties marriage;

    b. House Improvements located at Lot No. 10067-9-2-1-1;

c. Household furnishing and appliances.

18. The parties have the following community debts:

    a. Mortgage with Guam Housing Corporation for the house located at Lot No. 10067-9-2-1-1.

## CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 7 GCA § 3105. The Court will first discuss whether there are grounds for divorce under 19 GCA § 8205, and then discuss the appropriate division of property under 19 GCA § 8203.

### I.    Grounds for Divorce

Plaintiff seeks a divorce on the grounds of extreme cruelty, and in the alternative, irreconcilable differences. Defendant disputes extreme cruelty as a ground for divorce, but does not contest irreconcilable differences as a ground for divorce.

Under Guam law, "*[e]xtreme cruelty* is the wrongful infliction of grievous bodily injury, or grievous mental suffering, upon the other by one party to the marriage." 19 GCA §8205 (2005). Section 8205 derives from former California Civil Code § 94, and therefore, California cases interpreting section 94 are persuasive. *See Cruz v. Cruz*, 2005 Guam 3 ¶ 9. The California Courts have recognized that this provision "neither sharply defines nor definitely limits the phrase 'extreme cruelty' but merely describes it in general terms, leaving a wide range of discretion with the trial court." *Mcfall v. Mcfall*, 136 P.2d 580, 582 (Cal. Dist. Ct. App. 1943) (*citing Andrews v. Andrews*, 52 P. 298, 299 (Cal. 1898)). Therefore, "[e]ach case must be determined according to its own particular circumstances, by the good sense and judgment of the court, keeping always in view the intelligence, apparent refinement and delicacy of sentiment of the complaining party." *Id.* (citations omitted).

In this case, Plaintiff seeks divorce on the ground of extreme cruelty based on Defendant's alleged physical and mental abuse against Plaintiff and his son. In support of this contention, Plaintiff raises two charges against the Defendant for family violence. In DM0329-01, the parties entered into a stipulated permanent restraining order, but the parties continued to live together for a few months after the issuance of the order. Furthermore, Plaintiff filed for

divorce approximately ten years after the issuance of the order. Plaintiff's reason for the delay is that he did not want to be disrupted with his work.[1] Considering that the parties continued to live together even after the permanent restraining order and that Plaintiff did not commence the suit until approximately 10 years after the parties separated, the Court finds that extreme cruelty cannot be a ground for divorce given the evidence presented at trial. *Id.*

In the alternative, Plaintiff seeks divorce on the ground of irreconcilable differences. Defendant does not contest this ground for divorce. Therefore, the Court grants Plaintiff a divorce from Defendant on the ground of irreconcilable differences.

## II. Division of Property

Under Guam law, "[i]n a divorce action, a trial court has broad discretion to divide community assets in any fashion which complies with the provisions of the applicable statute." *Navarro v. Navarro*, 2000 Guam 31 ¶ 8. The applicable Guam statute here, the Dissolution of Marriage statute, provides that community property shall be divided equally between the parties unless the ground for divorce was adultery or extreme cruelty. 19 GCA § 8411(b) (2005). Having determined above that extreme cruelty is not a ground for divorce in this case, the community property shall be divided equally between the parties. *Id.* However, division does not have to be mathematically equal. *Sinlao v. Sinlao*, 2005 Guam 24 ¶ 23.

### a. Community Debt: The Mortgage with the Guam Housing Corporation

A community debt is a "debt contracted or incurred by either or both spouses during marriage which is not a separate debt." 19 GCA § 6102(b) (2005). The Supreme Court of Guam has adopted the well-settled rule in California that "the community property to be divided

---

[1] According to Guam law, a dissolution of marriage must be denied "[i]n all other cases when there is an unreasonable lapse of time before the commencement of the action." 19 GCA § 8314(c) (2005). "Unreasonable lapse of time is such a delay in commencing the action as [*sic*] establishes the presumption that there has been a connivance, collusion, or condonation of the offense, or full acquiescence in the same, with intent to continue the marriage relation notwithstanding the commission of such offense." 19 GCA § 8315 (2005). This presumption "arising from lapse of time may be rebutted by showing reasonable grounds for the delay in commencing the action." 19 GCA § 8316 (2005). The parties do not dispute the fact that Plaintiff filed for divorce approximately 10 years after the parties separated. The Court finds that Plaintiff's reason that he did not commence the suit earlier due to a potential disruption to his work is not a sufficient ground to overcome this presumption. Therefore, there is a presumption of a connivance, collusion, or condonation of the offense, or full acquiescence in the same, with intent to continue the marriage relation. 19 GCA § 8315 (2005).

upon dissolution of marriage is the residue which remains after the discharge of the community obligations." *Babauta v. Babauta*, 2011 Guam 15 ¶ 36 *(citing Wong v. Super. Ct. (Wong)*, 54 Cal. Rptr. 782, 784 (Ct. App. 1966)). Furthermore, 19 GCA § 6104 (a) (2005) provides:

> Community debts shall be satisfied first from all community property and all property in which the spouses own an undivided equal interest as joint tenants or tenants in common, excluding the residence of the spouses. Should such property be insufficient, community debts shall then be satisfied from the residence of the spouses. Should such property be insufficient, only the separate property of the spouse who contracted or incurred the debt shall be liable for its satisfaction. If both spouses contracted or incurred the debt, the separate property of both spouses is jointly and severally liable for its satisfaction.

19 GCA § 6104 (a) (2005).

In this case, during their marriage on July 7, 1994, the parties executed a mortgage on Lot No. 10067-9-2-1-1 with Guam Housing Corporation in exchange for $94,000.00. Because the debt was incurred during their marriage and both parties are named on the mortgage, the Court finds that the mortgage is community debt.

Pursuant to Guam law, the "[i]ncome of a spouse while living separate and apart from the other spouse is separate property." *Babauta*, 2011 Guam 15 ¶ 32; 19 GCA § 6101(a)(2) (2005). The Supreme Court of Guam has found that "[a]s a general rule, a spouse who, after separation of the parties, uses his or her separate funds to pay preexisting community obligations should be reimbursed upon divorce." *Babauta*, 2011 Guam 15 ¶ 32 (citing *In re Marriage of Epstein*, 592 P.2d 1165, 1170 (Cal. 1979)). However, the Supreme Court of Guam has recognized that reimbursement may be inappropriate in the following situations:

> where there was an agreement between the parties that the payment would not be reimbursed; where the paying spouse truly intended the payment to constitute a gift; where the payment was made on account of a debt for an asset which the paying spouse was using and the amount paid was not substantially in excess of the value of the use; or where the payment constituted in reality a discharge of the paying spouse's duty to support the other spouse or a dependent child of the parties.

*Id.* (*citing Epstein*, 592 P.2d at 1170).

In this case, it is uncontroverted that Plaintiff expended his separate funds to make the mortgage payments after the parties' separation. It is further uncontroverted that Plaintiff made

monthly payments of $875.96 toward the mortgage since the separation. There being no evidence of an agreement that the payments would not be reimbursed or that they constituted a gift, Plaintiff is thus entitled to credit or reimbursement for half of the payments he made on the residence after separation of the parties. *See Babauta,* at ¶ 34. Considering the fact that the parties both testified that they lived together for a few months after the stipulated permanent restraining order was issued on August 1, 2001, the Court finds that the parties entered into permanent physical separation on or about November 1, 2001. Having so determined, Plaintiff has expended his separate funds for 11 years and 8 months, for a total of 140 months, up to the July 7, 2013 date when there was a remaining principal balance of $24,076.13. (Defendant's Exhibit 2, Jan. 13, 2014). Therefore, Plaintiff is entitled to a reimbursement of $60,057.20, calculated as follows: 140 months multiplied by $857.96 divided by two, which equals $60,057.20. The remaining principal balance of $24,076.13 shall be satisfied first from all community property and all property in which the spouses own an undivided equal interest as joint tenants or tenants in common, and if such property is insufficient, then the remaining balance shall be satisfied from the residence of the parties. *See Babauta,* 2011 Guam 15 ¶ 36; 19 GCA § 6104 (a) (2005).

**b. Retirement Fund**

Under Guam law, the "right to retirement benefits is a property interest, and to the extent that the interest derives from employment during the marriage, it is a community asset." *Hart v. Hart,* 2008 Guam 11 ¶ 26 (*citing In re Marriage of Lehman,* 955 P.2d 451, 459 (Cal. 1998)); *see also* 19 GCA § 6101 (b) (2005) ("Community property means property acquired by either spouse during marriage which is not separate property."). Therefore, the right to Plaintiff's retirement fund is a property interest that may be characterized as community property which may be divided in the dissolution of a marriage. *Hart,* 2008 Guam 11 ¶ 26.

In determining the amount of the retirement fund assets to be divided between each party, the Supreme Court of Guam has adopted the use of the apportionment equation in *Sablan v. Sablan,* 1979 WL 15117 at *1-2 (D. Guam App. Div. Feb. 15, 1979). *Id.* at ¶ 26. In *Sablan,* the Appellate Division of the District Court of Guam approved the use of the following

apportionment equation to calculate a party's entitlement to the community property of a retirement fund: one half times the total retirement pay times the fraction represented by the length of marriage in the numerator and the total length of military service in the denominator. *Hart*, 2008 Guam 11 ¶ 28 n.20 (*citing Sablan*, 1979 WL 15117 at *1).

In this case, it is undisputed that Plaintiff retired in July 2012. Between August 7, 2012 and November 15, 2013, Plaintiff has been receiving disbursements of his retirement benefit in the accumulated amount of $105,043.67. (Plaintiff's Exhibit 2, Jan. 10, 2014). Because the parties were married on September 21, 1991 and separated on or about November 1, 2001, the Court finds that the parties were together for approximately 10 of Plaintiff's 22 years of service.

Applying the above formula to this case, the Court finds that Defendant is entitled to one half times $105,043.67 (total retirement pay) times 10/22 (the fraction represented by the length of marriage in the numerator and the total length of service in the denominator), which equals $23,873.56. Therefore, Defendant is entitled to $23,873.56 as her interest in the already disbursed retirement benefits, and the Court hereby orders that Defendant is entitled to 5/22 (approximately 22.72%) of Plaintiff's future benefits from the retirement fund.

### c. Increase in the Value of Lot No. 10067-9-2-1-1

It is undisputed that the house is an enhancement to Lot No. 10067-9-2-1-1, Plaintiff's separate property. Defendant seeks reimbursement for funds she expended to improve the value of Plaintiff's separate property. (Defendant's Proposed Finds. Fact & Concl. L., 2, Feb. 14, 2014).

Guam law directs that an enhancement made to separate property allows the community property holder to seek reimbursement for community funds contributed during the marriage toward that asset. *Rinehart v. Rinehart*, 2000 Guam 14 ¶¶ 19-20. However, "absent proof of the enhancement of a spouse's separate property, there should be no reimbursement to the community." *Navarro v. Navarro*, 2000 Guam 31 ¶ 16 (*citing Rinehart*, 2000 Guam 14 ¶¶ 19-20).

In this case, the house was constructed with the proceeds from the loan the parties obtained during the marriage. The house was constructed with community funds during the

marriage and is therefore community property. 19 GCA § 6101(b) (2005). Thus Defendant is entitled to reimbursement for the amount that the house improved the value of Lot No. 10067-9-2-1-1.

Defendant seeks $24,096.00 for the increased value of Lot No. 10067-9-2-1-1. (Defendant's Proposed Finds. Fact & Concl. L., 4, Feb. 14, 2014). This amount is deduced from the following calculation:

1. Based on DRT's valuation in 1996, Lot No. 10067-9-2-1-1 was valued at $78,152.00 and the house was valued at $90,000, for a total of $168,152.00. (Defendant's Exhibit 4, Jan. 13, 2014).

2. On November 11, 2013, a realtor assigned a recommended listing price for the house and the lot of $195,000. (Plaintiff's Exhibit 4, Jan. 10, 2014).

3. Based on DRT's valuation in 2012, Lot No. 10067-9-2-1-1 was valued at $56,808.00, a reduction of $21,344.00 from the valuation in 1996. (Defendant's Exhibit 6, Jan. 13, 2014).

4. Defendant subtracts the 2012 valuation of the lot ($56,808.00) from the value assigned by the realtor ($195,000.00) to arrive at the calculation that the house's value is $138,192.00.

5. Defendant takes this $138,192.00 amount and subtracts $90,000.00 (the valuation of the house by DRT in 1996) to arrive at the figure $48,192.00. Defendant suggests that this is the amount by which Plaintiff's separate property lot increased.

6. Defendant states that he is entitled to one half of this increased value, in the amount of $24,096.00.

(Defendant's Proposed Finds. Fact & Concl. L., 2-4, Feb. 14, 2014).

The above calculation is problematic on multiple fronts. First, the calculation is based on figures from DRT and a realtor, and their methods of calculating may not necessarily be consistent. Thus the Court is apprehensive toward calculating the increase in the value of a property when the calculation is based on valuations from two different sources. Second, the Court is perplexed as to why Defendant failed to incorporate DRT's 2012 valuation of the house

in its calculations and instead relied on a single realtor's valuation, when Defendant adopted DRT's 1996 valuation of the house for its calculation. The use of DRT's valuation of the house in 2012 would have led to a more consistent calculation as to the change in the value of the lot. Third, Defendant is seeking reimbursement for the increase in the value of separate property for a period after she separated with Defendant on November 1, 2001. However, Defendant is only entitled to reimbursement for the amount of community property that was expended to enhance Lot No. 10067-9-2-1-1 during their marriage. *Rinehart*, 2000 Guam 14 ¶¶ 19-20. Accordingly, Defendant is not entitled to reimbursement for the enhancement of Lot No. 10067-9-2-1-1 after separation.

The Court was not presented with sufficient evidence relating to the value of Lot No. 10067-9-2-1-1 before or at the time of their marriage and the value of Lot No. 10067-9-2-1-1 at the time of separation. Therefore, the Court is unable to calculate the amount of the increased value of the separate property lot at this time. However, Defendant is entitled to one half of the enhancement to Lot No. 10067-9-2-1-1 from the time of their marriage to the date of their separation.

**d. Household Furnishings and Appliances**

Plaintiff claims that household furnishings and appliances are community property. (Compl., 2, Aug. 28, 2012). Defendant argues that the household furnishings and appliances are her separate property. (Answer, 1-2, Oct. 29, 2012). Neither the evidence presented at trial nor the submitted trial briefs specifically address these items for this Court to adequately determine the nature of these items and the amount of each item. Thus this Court is unable to determine the division of the property as to the household furnishings and appliances at this time.

## CONCLUSION AND ORDER

In accordance with the findings of fact and conclusions of law set forth above, the Court orders that:

1. Plaintiff and Defendant are entitled to a divorce from Defendant on the ground of irreconcilable differences. Since six months have expired after the filing of Plaintiff's

complaint for divorce, an entry of a Final Decree of Divorce is ordered at this time pursuant to 19 GCA § 8322 (2005).

2. The mortgage with the Guam Housing Corporation is deemed to be community debt. Defendant shall reimburse Plaintiff $60,057.20 for the mortgage payments already paid. The remaining balance of $24,076.13 shall be paid off evenly by the parties.

3. The property of the marriage is to be distributed as follows:

   a. Defendant is entitled to $23,873.56 of the already disbursed retirement benefits from Plaintiff, and the Court hereby orders that Defendant is entitled to 5/22 (approximately 22.72%) of Plaintiff's future benefits from the retirement fund.

4. Defendant shall submit further documentation and briefs relating to Defendant's entitlement to the enhancement of Lot No. 10067-9-2-1-1, the house on the lot, and household furnishing and appliances consistent with the Court's analysis within seven (7) days of the issuance of this order.[2] Plaintiff shall submit its own documentation and brief within seven (7) days of the filing of Defendant's documentation and/or briefs.

This matter is set for further proceedings on April 16, 2014 at 9:00 a.m.

**SO ORDERED this 28th day of March, 2014.**

HON. JAMES L. CANTO II
**Judge, Superior Court of Guam**

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of:
D. Soherfleck
J. Cook + DHR
Date: 3/28/14 Time: 2 PM

Deputy Clerk Superior Court of Guam

---

[2] The burden to prove valuation "lies with the party who seeks the division of community property." *Sinlao v. Sinalo*, 2005 Guam 24 ¶ 28 (*quoting Navarro v. Navarro*, 2000 Guam 31 ¶ 9).